**PHILLIP D. JACKSON**
28598 Kristin Lane
Highland, California 92346
Tel: (951)505-3221
Fax: (909)899-3881
Email: phillipdjackson@sbcglobal.net

PLAINTIFF IN PRO SE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP D. JACKSON<br><br>          Plaintiff,<br><br>     v.<br><br>NATIONSTAR MORTGAGE LLC;<br>FEDERAL HOME LOAN MORTGAGE<br>CORPORATION ("FREDDIE MAC");<br>AND DOES 1-10, INCLUSIVE<br><br>          Defendants. | Case No.: 5:17-cv-0044-CAS-(KKx)<br><br>SECOND AMENDED COMPLAINT<br>FOR:<br><br>1. DECLARATORY RELIEF<br>   [28 U.S.C. §§ 2201, 2202]<br>2. VIOLATION OF THE FAIR<br>   DEBT COLLECTION PRACTICES<br>   ACT ("FDCPA"), 15 U.S.C. § 1692,<br>   ET SEQ.<br>3. CANCELLATION OF<br>   INSTRUMENTS<br>4. VIOLATION OF BUSINESS &<br>   PROFESSIONS CODE, SECTION<br>   17200, et seq.<br>5. QUASI CONTRACT<br>6. NEGLIGENCE<br><br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to the Order of the Court made on May 15, 2017, Plaintiff, PHILLIP

1

**SECOND AMENDED COMPLAINT**

D. JACKSON ("Plaintiff" or "JACKSON"), a "consumer" as defined by the Fair Debt Collection Practices Act, hereinafter referred to as FDCPA, *15 U.S.C. § 1692a(3)*, files this Second Amended Complaint, hereinafter referred to as SAC, against Defendants NATIONSTAR MORTGAGE LLC, hereinafter referred to as NATIONSTAR, (in its capacity as purported mortgage servicer of Plaintiff's debt obligation and "debt collector", *15 U.S.C. § 1692(a)(6)*; and FEDERAL HOME LOAN MORTGAGE CORPORATION, hereinafter referred to as FREDDIE MAC, (in its capacity as the alleged owner and assignee of Plaintiff's debt obligation and "debt collector as defined by the FDCPA, *15 U.S.C. § 1692a(6)*, complaints, pleads and alleges as follows:

## I. **JURISDICTION AND VENUE**

This Court has original jurisdiction over the claims in this action based on *28 U.S.C. §§ 1331, 1332, 1343, 15 U.S.C. § 1692, et seq.* and *42 U.S.C. § 1983* which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[1]

This Court has original jurisdiction over the claims in the action based on *28 U.S.C. § 1332* which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

This Court also has supplemental jurisdiction over the pendant state law claims

---

[1] The Ninth Circuit instructs that in actions brought under *28 U.S.C. § 2201*, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). The *Brillhart* factors require the Court to 1) avoid needless determination of state law issues; 2) discourage litigants from filing declaratory actions as a means of forum shopping; and 3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; *see also Schafer v. Citimortgage* No. CV 11-0319, 2011 WL 2437267 (C.D. Cal. June 15, 2011). As held by the court in *Schafer*, this action does not involve a needless determination of state law issues, does not involve forum shopping, and is not duplicative litigation.

**SECOND AMENDED COMPLAINT**

because they form a party of the same case or controversy under Article III of the United States Constitution, pursuant to *28 U.S.C. § 1367.*

The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Central District of California and involved real property located in the Central District of California.  Therefore, venue properly lies in this District, pursuant to *28 U.S.C. § 1391(b).*

## II.    SUBJECT REAL PROPERTY AT ISSUE

The Real Property (herein after referred to as "Property"), the subject of any and all claims of any of the Parties hereto, and which is the subject of instant action, and that of which Plaintiff prays for a Decree and/or Order of Declaratory Relief thereto.  The "Subject Property" address and legal description is as follows:  28598 Kristin Lane, Highland, CA 92346.  More particularly, the legal description of this property is:

LOT 6, TRACT NO. 15618-2, IN THE CITY OF HIGHLANDS, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 265, PAGES 55 THROUGH 57, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel No.  1201-441-22-0-000.

## III.    IDENTITY OF PARTIES

Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto Defendant, NATIONSTAR, is a national mortgage servicing institution licensed to do business in the State of California, in and of the County and City where subject

**SECOND AMENDED COMPLAINT**

"PROPERTY" is so situated and physically located which is within this Courts Judicial District.

Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto Defendant, FREDDIE MAC, is a federally chartered entity doing business in the State of California, in and of the County and City where subject "PROPERTY" is so situated and physically located which is within this Courts Judicial District.

Plaintiff is unaware of the true names and capacities of any individuals and/or entities sued herein under the fictitious names DOES 1 to 10, inclusive or, to the extent that the names of such individuals or entities may become known to Plaintiff, and as such Plaintiff cannot state with any certainty that such a Cause of Action lies herein as against such individuals or entities, or Plaintiff is unable to alleged the elements of such Cause of Action, at this time, and as such said Defendants are herein named in accordance with the provisions of (*Cal Code of Civil Procedure Sec. 474*).  Plaintiff thereon reserves the right to amend instant Complaint to allege the true names and capacities of such fictitiously named Defendants when the same become known or when it has been ascertained with reasonable certainty that such Cause of Action hereunder can be satisfactorily stated and maintained as against each such fictitiously named individual or entity.

Plaintiff is informed and believes and thereon alleges, that in committing certain acts alleged, some or all of the Defendants named were acting as the Agents, Joint Ventures, Partners, Representatives, Subsidiaries, Affiliates, Associates, Successors, Assigns and/or Employees and/or Agents or some or all of the other Defendants, and that

4

**SECOND AMENDED COMPLAINT**

some or all of the conduct of such Defendants, as complained of herein, was within the course and scope and agency of such relationship.

Wherever reference is made in this SAC to any act of any Defendants, that allegation shall mean that each Defendants acted individually and jointly with the other Defendants.

Any allegation about acts of any corporate or other business Defendants means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

At all relevant times, each Defendants committed the acts, caused or directed to others to commit the acts, or permitted others to commit the acts alleged in this SAC. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

At all relevant times, Defendants knew or realized that the other Defendants (successors and/or assigns) were engaging in or planned to engage in the violations of law alleged in this SAC. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendants nevertheless facilitated the commission of those unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

At all times mentioned in this SAC, Plaintiff, PHILLIP D. JACKSON is an

5

**SECOND AMENDED COMPLAINT**

individual consumer residing in the County of San Bernardino and is the owner of the certain Subject Property.

This is a federal judicial issue and the Consumer is authorized by the Constitution for the United States of America, codified in the FDCPA, to enforce the laws of the United States and to protect and defend those inalienable secured rights within the Constitution for the United States of America. This is an action to enforce the liability of the Debt Collectors/Defendants for violations of this Consumer's protections under the FDCPA, the Constitution for the United States of America, and other consumer protection laws which were enacted by Congress to protect Consumers from illegal, harassing, deceptive and abusive debt collection activities.

The rules of law governing this Complaint is the FDCPA, *15 U.S.C. § 1692,* the Consumer Financial Protection Bureau (CFPB), the Federal Trade Commission (FTC) and Article III, Section 2 of the United States Constitution. The language to be used in this matter is the Plaint Writing Act of 2010 – which has been enacted by Congress through Executive Order 13563. It requires federal agencies to use clear communications that the public can easily understand and written in plain language.

Any motions or pleadings, that contain legalese and are not written in plain English for the Consumer to understand, will be intentionally confusing, abusive, profane, obscene and harassing to the Consumer, would be a violation of *15 U.S.C. § 1692d(2)*, and will be assessed at an additional $5,000.00 per occurrence and added to this Consumer's verified claim.

6

**SECOND AMENDED COMPLAINT**

Any response, communications or counterclaim to this Consumer's Complaint verified claim, from any Debt Collector/Defendant in the form of pleadings or otherwise, should be verified, under oath and penalty of perjury, as required by law. There will be no exceptions. Any false statements made in any communications by the Defendants in this enforcement action, would be considered perjury. Each occurrence of perjury will be assessed at $25,000.00 and will be added to the Consumers' damages.

Any debt collector or attorney attempting to come into this consumer matter, MUST have prior consent from the Consumer or a court of competent jurisdiction to enter their appearance and MUST have the proper license; and MUST be properly bonded and insured in an amount to cover all of the Consumers' damages in this action.

## IV.   DATE OF DETERMINATION

Plaintiff herein request that the date of the Judicial determination sought be that of the date of the filing of this Complaint which was January 11, 2017.

## V.   DEMAND FOR JURY TRIAL

Plaintiff PHILLIP D. JACKSON hereby demands a trial by jury on all claims.

## VI.   STATEMENT OF THE CASE

This action arrives out of the illegal conduct and behavior of the "debt collectors", Defendants NATIONSTAR and FREDDIE MAC, engaging in illegal collection activities as defined in *15 U.S.C. § 1692, et seq.*

The Defendants attempts to collect payment and eventually proceed with a nonjudicial foreclosure action to dispossess and disable the Plaintiff from his personal,

**SECOND AMENDED COMPLAINT**

private property that was obtained for personal, family and household use – not for commercial business or trade.  The Defendants have no lawful or legal right to do so.

The Plaintiff, a "consumer" disputed the unverified alleged debt with the Defendants and has requested verification and validation of the alleged debt.  To date, Defendants have refused to provide the Plaintiff verification and validation that they had a lawful right to contact him, attempt to collect on the alleged debt, and to proceed with a nonjudicial foreclose on his Property.

## VII.   THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

Congress has determined that there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.  Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

The purpose of the FDCPA is to eliminate abusive debt collection practices by "debt collectors", to insure that those "debt collectors" who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

*15 U.S.C. § 1692a* states the following:

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

**SECOND AMENDED COMPLAINT**

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

Further pursuant to *15 U.S.C. §1692f(6)(A)* a "debt collector" may not use unfair or unconscionable means to collect or to attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest..."

## VIII.   FACTUAL ALLEGATIONS

On June 14, 2006, Plaintiff, executed a Deed of Trust in favor of Mountain West Financial Inc., hereinafter referred to as Mountain West, in the amount of $391,999.00. Mountain West is a "creditor" as defined by the FDCPA, *15 U.S.C. § 1692(4)*. The transaction as defined by the FDCPA, *15 U.S.C. § 1692(5)* is a "debt" and hereinafter referred to as a debt or debt obligation.

On June 21, 2006, Mountain West caused to be recorded with the San Bernardino

**SECOND AMENDED COMPLAINT**

County Recorder's Office the Deed of Trust, hereinafter referred to as DOT, and Promissory Note, hereinafter referred to as Note.  The DOT was recorded as Instrument Number 2006-0421023.  Attached as **Exhibit "A"** and incorporated herein by reference is a true and correct copy of the DOT.

On information and belief, Plaintiff alleges that shortly after the origination of his debt, Mountain West allegedly sold his alleged debt to another entity or entities.  The entity or entities are currently unknown but will be identified through discovery.

Plaintiff experienced an extreme financial hardship in 2011 and fell behind in his payments.  The alleged debt subsequently fell into default.  Over the past seven years, Plaintiff has made attempts to modify and seek the truth in who actually owns his alleged debt.  Plaintiff's attempts have been unsuccessful and the identity of the true beneficiary to his alleged debt remains unknown to him at this time.  Plaintiff contends that Defendants have repeatedly given him false information and has forced him to believe that they are the actual beneficiaries of his alleged debt.

After researching the chain of title to his Property in the San Bernardino County Recorder's Office, Plaintiff became aware of transactions that were never disclosed to him.  Plaintiff soon learned that none of the Defendants named in this lawsuit have or had any legal or corporate authority to collect on his debt, service the debt, modify his alleged loan, or proceed with a lawful foreclosure.

Defendant NATIONSTAR since acquiring the servicing of Plaintiff's debt in on or about June 15, 2012, while Plaintiff's alleged debt was contractually due for the March 1,

**SECOND AMENDED COMPLAINT**

2012 payment, has been harassing Plaintiff by attempting to collect a debt that they do not have a lawful right to do.  On or about February 12, 2013, Defendant NATIONSTAR sent Plaintiff a letter informing him that they were debt collectors attempting to collect a debt and that the servicing to his alleged debt transferred to them on or about June 15, 2012.  Plaintiff's alleged debt was already in default at that time.  Attached as **Exhibit "B"** and incorporated herein by reference is a copy of the letter.

On May 21, 2012, an Assignment of Deed of Trust was executed and subsequently recorded that assigned or transferred all beneficial interest under the Deed of Trust to Defendant FREDDIE MAC.  This assignment was executed while the Plaintiff's alleged debt was in default.  Attached as **Exhibit "C"** and incorporated herein by reference is a true and correct copy of the Assignment of Deed of Trust.

On May 14, 2014, an Assignment of Deed of Trust was executed and subsequently recorded that assigned or transferred all beneficial interest under the Deed of Trust to Defendant FREDDIE MAC, again.  This assignment was executed while the Plaintiff's alleged debt was in default.  Attached as **Exhibit "D"** and incorporated herein by reference is a true and correct copy of the Assignment of Deed of Trust.

On June 24, 2014, a Substitution of Trustee, hereinafter referred to as SOT, was executed and subsequently recorded against Plaintiff's Property attempting to substitute the original trustee, First American Title Insurance Company, to Pite Duncan, LLP.  Attached as **Exhibit "E"** and incorporated herein by reference is a true and correct copy of the SOT.  This SOT is invalid pursuant to California *Civil Code §2934(a)(1)(A)*.

**SECOND AMENDED COMPLAINT**

Pursuant to *Civil Code §2934(a)(1)(A)* only the beneficiary of the NOTE can substitute a foreclosing trustee under a Deed of Trust.  There is no valid record document that evidences the SOT was executed by Plaintiff's beneficiary or "creditor".  Defendant NATIONSTAR was not Plaintiff's creditor when they executed this document.  Because Defendant NATIONSTAR was not Plaintiff's "creditor" but a "debt collector" as defined by the FDCPA, the SOT is invalid.  The document is void and any foreclosure sale would be void.

On July 17, 2014 Defendants' agent, Pite Duncan, LLP, executed and subsequently recorded a Notice of Default, hereinafter referred to as NOD, on Plaintiff's Property.  Attached as **Exhibit "F"** and incorporated herein by reference is a true and correct copy of the NOD.

The NOD makes false statements that the present Beneficiary under such Deed of Trust has executed a written Declaration and Demand for Sale and has deposited with said duly appointed Trustee, the DOT and all documents evidencing obligations secured thereby, falsely represents to Plaintiff that Defendant NATIONSTAR is entitled to initiate and proceed with a nonjudicial foreclosure.  Defendant NATIONSTAR is a "debt collector".  Only "creditors" can enforce a foreclosure.

On October 15, 2015, Defendant NATIONSTAR, sent Plaintiff a letter indicating that they are a debt collector attempting to collect a debt.  The letter also informs Plaintiff that Defendant he obligated to pay the alleged debt and that any failure to do so will result in a foreclosure of his Property.  The letter also confirms that Plaintiff's alleged debt was contractually due for the July 1, 2012 payment as a result of Plaintiff making

12

**SECOND AMENDED COMPLAINT**

payments on his 2010 Modification Agreement.  Attached as **Exhibit "G"** and incorporated herein by reference is a true and correct copy of the October 15, 2015 letter.

On October 21, 2015, Plaintiff, in an attempt to save his home, executed a Modification of Deed of Trust, not knowing or realizing that Defendant NATIONSTAR had no right or authorization to negotiate a Modification Agreement with him.  The Modification Agreement clearly states that Defendant NATIONSTAR is Plaintiff's Lender and that the Lender is the beneficiary under the Deed of Trust and not Defendant FREDDIE MAC.  Plaintiff contends that Defendants fraudulently misrepresented the character, amount, and legal status of his alleged debt obligation.  Attached as **Exhibit "H"** and incorporated herein by reference is a true and correct copy of the Modification Agreement.

On June 20, 2016, Defendant NATIONSTAR, sent Plaintiff a letter informing him that Defendant FREDDIE MAC is the current owner of his alleged debt.  In the letter, NATIONSTAR, once again, acknowledges that they are a debt collector.  This letter further demonstrates that Defendants are still attempting to collect a debt without any authorization or right.  Defendants continues to misrepresent the character, amount, and legal status of Plaintiff's alleged debt obligation.  Attached as **Exhibit "I"** and incorporated herein by reference is a true and correct copy of the June 20, 2016 letter.

Every month Defendant NATIONSTAR harasses Plaintiff by attempting to collect on a debt without proper validation.  Defendant NATIONSTAR has repeatedly sent statements and other correspondence letters to Plaintiff in violation of the FDCPA.

13

**SECOND AMENDED COMPLAINT**

The statements contained in letters sent to Plaintiff by Defendant is a violation of *15 U.S.C. § 1692e(2)*. Pursuant to *15 U.S.C. § 1692e(2)*, Defendants NATIONSTAR and FREDDIE MAC, are "debt collectors" and are attempting to collect an alleged debt under false, deceptive and misleading means by stating an inaccurate, character, amount and status of debt. Defendants have informed Plaintiff that if he does not pay, it would result in a nonjudicial foreclosure.

Defendants intentions to proceed with a nonjudicial foreclosure is a violation of the FDCPA, *15 U.S.C. § 1692f(6)(A)* which states that a "debt collector: may not use or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest…"

Here, Plaintiff alleges that Defendants are both "debt collectors" and have no legal right or authority to collect or attempt to collect any payments or have a right to foreclose on Plaintiff's Property.

*15 U.S.C. § 1692j(a)* states the following:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

//

14

**SECOND AMENDED COMPLAINT**

## IX.   PLAINTIFF HAS A PRIVATE RIGHT TO ACTION

As a "consumer" with protections under the FDCPA and the Consumer Financial Protections Bureau, hereinafter referred to as CFPB, Congress has afforded the Plaintiff a "private right of action" for damages caused by the illegal, deceptive and abusive collection activities of a "debt collector". A "consumer" has the private right to exercise every provision in the consumer protection laws or any other constitutional protections that have been afforded to him as a "consumer".

The CFPB affirms that Congress intended the FDCPA to be primarily self-enforcing, and the "consumer" does not have to ask permission to enforce it. The CFPB's Supplemental Amicus Brief for *Bock v. Pressler, LLP*, No. 15-1056 stated the following:

> "The Bureau has a substantial interest in plaintiffs' standing under Article III to bring in federal court to assert their rights under the Fair Debt Collection Practices Act (FDCPA or Act). Although the Bureau and various other federal Agencies have authority to enforce the Act, *15 U.S.C. § 1692l*, **Congress intended the Act to be "primarily self-enforcing," in that "consumers who have been subjected to collection abuses will be enforcing compliance," S. Rep. No. 95-382, at 5 (1977). An unduly narrow understanding of Article III standing would limit consumers' ability to exercise the Act's private right of action and thereby weaken an important supplement to the Bureau's own enforcement efforts**. *Emphasis added.*

Plaintiff is requesting this Court is to assist him in this Enforcement Action. Plaintiff is a natural person and requests that this Court bear witness to his private right to action.

If the Defendants, as "debt collectors" feel they have a lawful, bona fide, or

15

**SECOND AMENDED COMPLAINT**

verified claim to Plaintiff's personal, private Property, then they MUST file a verified

counterclaim pursuant to *15 U.S.C. § 1692i.*

## FIRST CAUSE OF ACTION - DECLARATORY RELIEF
[Against All Defendants and Doe Defendants]

1. Plaintiff hereby incorporates by reference each and every one of the preceding

paragraphs as if the same were fully set forth herein.

2. *Section 2201(a) of Title 28* of the United States Code states:

> In case of actual controversy within its jurisdiction, except with
> to Federal taxes other than actions of brought under section
> 7428 of the Internal Revenue Code of 1986, a proceeding
> under section 505 or 1146 of title 11, or in any civil action
> involving an anti-dumping or countervailing duty proceeding
> regarding a class or kind of merchandise of a free trade area
> country (as defined in section 516A(f)(10) of the Tariff Act of
> 1930), as determined by the administering authority, any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of any
> interested party seeking such declaration, whether or not
> further relief is or could be sought. Any such declaration
> shall have the force and effect of a final judgment or decree
> and shall be reviewable as such.

*Section 2202 of Title 28* of the United States Code states:

> Further necessary or property relief based on declaratory
> judgment or decree may be granted, after reasonable notice
> and hearing, against any adverse party whose rights have
> been determined by such judgment.

3. Plaintiff alleges that Defendant NATIONSTAR and/or FREDDIE MAC does

not have a secured or unsecured legal, equitable, or pecuniary interest in the lien

evidenced by the Deed of Trust, the Modification of the Deed of Trust and Note which

are wholly unsecured.

16

**SECOND AMENDED COMPLAINT**

4. Thus, the competing allegations made by Plaintiff, above, establish that a real and present controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

5. Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating that Defendant NATIONSTAR and/or FREDDIE MAC, as "debt collectors" as defined by the FDCPA, does not have any rights or interest in Plaintiff's Note and Deed of Trust, or the Property which authorized them, in fact or as a matter of law to enforce the terms of the Note and Deed of Trust in any matter whatsoever.

6. Due to actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination that Defendant NATIONSTAR and/or FREDDIE MAC claims against Plaintiff's Property are unenforceable, null and void.

**SECOND CAUSE OF ACTION – VIOLATION OF 15 U.S.C. § 1692, ET SEQ. ("FDCPA")**
[Against All Defendants and Doe Defendants]

7. Plaintiff hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

8. In California only a "creditor" may enforce a foreclosure. Defendants are "debt collectors" as defined by the FDCPA, *15 U.S.C. § 1692a(6).*

9. Defendants have threatened to take action and is continuing to threaten Plaintiff by threatening to conduct a nonjudicial act if Plaintiff does not pay the alleged debt in violation of *15 U.S.C. § 1692f(6)(A).*

17

**SECOND AMENDED COMPLAINT**

10.  As alleged herein, Plaintiff's alleged debt was not legally transferred, conveyed, or assigned to any one before the alleged debt fell into default.  Any interest or claim claimed by NATIONSTAR and/or FREDDIE MAC, was acquired after Plaintiff's alleged debt was already in default.  As defined by the FDCPA, they are "debt collector" without authority to collect.

11.  Defendant NATIOSNTAR is and has been attempting to collect mortgage payments, engage in other unlawful collection practices, and will attempt to foreclose on Plaintiff's Property.

12.  Plaintiff alleges that Defendants are falsely representing the status of Plaintiff's alleged debt obligation and is misleading Plaintiff to believe they have the ability to enforce Plaintiff's alleged debt obligation, in which they have no pecuniary equitable, or legal interest.

13.  The conduct described above by Defendants is malicious because Defendants, each of them, knows that they were not acting on behalf of the current pecuniary beneficiary of the alleged debt.  However, despite such knowledge, Defendants continued to demand mortgage payments and threatens to proceed with a nonjudicial foreclosure on Plaintiff's Property.

14.  Defendants continuously attempted to collect an unverified alleged debt without providing verified evidence they had a legal right to do so which is a violation of *15 U.S.C. § 1692g(b)*.  At all times relevant in this action, Defendants acquired whatever data they have in their possession from a third party.

18

**SECOND AMENDED COMPLAINT**

15.   The Defendants have used that data in their illegal acts and conduct of collecting an alleged debt in their illegal acts and conduct of collecting an alleged debt from the Plaintiff who is a consumer.  The data that the Defendants have used in their illegal debt collection activities was for an alleged debt that was already in default.

16.   At no time has Plaintiff given to Defendants his prior consent to the "debt collectors" to contact him nor did Defendants receive express permission from a court of competent jurisdiction in violation of *15 U.S.C. § 1692c(a)*.  The law of the FDCPA is very clear.  A "debt collector" must obtain permission to contact a "consumer" regarding an alleged debt.  If they do not get permission, then they must obtain permission from a court of competent jurisdiction.  Defendants never obtained prior permission from the Plaintiff nor a court of competent jurisdiction.

17.   Plaintiff has never received verification from the original "creditor" in the form of genuine loan level account documentation, and validation sworn to under penalty of perjury, and under oath from Defendants as required by under the FDCPA.

18.   Defendants initiated an illegal debt collection action dubbed a foreclosure when they had no legal authority to do so violating *15 U.S.C. § 1692e(5), 15 U.S.C. § 1692f(6)(A), (B), and (C)*, and *15 U.S.C. § 1692i*.

19.   Every communication taken by Defendants including the ADOT, NOD and SOT was an attempt to collect a debt and were violations of the FDCPA pursuant to *15 U.S.C. § 1692e(5), 15 U.S.C. § 1692e(6)(B), 15 U.S.C. § 1692i, 15 U.S.C. § 1692j(a) and (b)*.

**SECOND AMENDED COMPLAINT**

20.  Defendants are having forced contact with Plaintiff.  They have criminally trespassed[2] and used instrumentalities of interstate commerce to do it.  Trespassing is a crime.

21.  Defendants took Plaintiff's personal, private information and made it public, and distributed it to third parties without the Plaintiff's authorization in violation of *15 U.S.C. § 1692c(b)*.  Defendants have refused to provide adequate and sufficient verification and validation of any alleged debt as requested by Plaintiff.  The Defendants have stolen the Plaintiff's personal, private information and put it into a nonjudicial act without the Plaintiff's authorization or consent.

22.  Defendants, NATIONSTAR and FREDDIE MAC, have falsely represented the character of Plaintiff's alleged debt and misrepresented that they were "creditors" and not "debt collectors".  The SOT was created and publicly recorded in violation of *15 U.S.C. § 1692j(a)(b)* and was compiled and designed in order to collect payment from an illegal sale of the Plaintiff's personal private Property.

23.  Defendants have attempted to collect an alleged debt under false, deceptive, and misleading means and stated an inaccurate character, amount and status of said debt violating the FDCPA, *15 U.S.C. § 1692e(2)*.

24.  The FDCPA applies to loan servicers and assignees, who, like Defendants NATIONSTAR and FREDDIE MAC began servicing and claim ownership after the loan

---

[2] Criminal trespass is an unlawful intrusion that interferes with one's person or property.  Any wrongful conduct directly causing injury or loss.  A trespass gives the aggrieved party the right to bring a civil lawsuit and collect Damages as compensation for the interference and for any harm suffered.  Trespass is an intentional tort and, in some circumstances, can be punished as a crime.

**SECOND AMENDED COMPLAINT**

is in default.  The key requirement is that servicing begin after the loan is in default.  *See e.g. Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not"); *Wilson v. Draper & Goldberg, PLLC*; 443 F.3d 373, 378 (4th Cir. 2006) (the defendants' status as foreclosure trustees did not exclude them from the definition of "debt collector" under *15 U.S.C. § 1692a(6)(F)(I)*; and as the defendants could still be "debt collectors" even if they were also enforcing a security interest); *See also Kaltenbach v. Richards*, 464 F.3d 524, 528-29 (5th Cir. 2006).

25.  Defendants behavior and conduct have injured and harmed the Plaintiff with their willful and continuous illegal, deceptive and criminal violations of federal and state law in their attempt to collect an unverified alleged debt initiating and completing a non-judicial foreclosure which is in violation of 15 U.S.C. *15 U.S.C. § 1692f(6)(A)*.

26.  The Defendants violated the FDCPA by attempting to collect an alleged debt on behalf of another, and they are using instrumentalities of interstate commerce, and the mail (USPS) to communicate with the Plaintiff.  They are debt collectors as defined under *15 U.S.C. § 1692a(6)*.

27.  Plaintiff could not have reasonably known of the existence of a claim for violation of *15 U.S.C. § 1692e* because Defendants fraudulently concealed the fact that they were not entitled to enforce alleged Plaintiff's debt and that they were falsely representing to Plaintiff the character and amount of money Plaintiff still owed on the

**SECOND AMENDED COMPLAINT**

alleged debt.[3]

28.  As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to *15 U.S.C. § 1692k(a)(1)*; statutory damages in an amount up to $1,000.00 pursuant to *15 U.S.C. § 1692k(a)(2)(A)*; reasonable attorneys' fees, and costs pursuant to *15 U.S.C. § 1692(a)(3)*; and declaratory relief, from each and every Defendant herein.

## THIRD CAUSE OF ACTION – CANCELLATION OF INSTRUMENTS
### [Against All Defendants and Doe Defendants]

29.  Plaintiff hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

30.  Plaintiff has a reasonable apprehension that the wrongful, illegal, and false instruments created, published, and recorded by the Defendants herein, if left outstanding, may continue to cause serious injury to Plaintiff.  Plaintiff requests this court to adjudge and order Defendants to deliver up the Deed of Trust and all Modification Agreements executed by Plaintiff, the ADOT, SOT, NOD, and all other documents that relates to the Deed of Trust so that they may be canceled, or in the alternative, to declare the them void and to be without force and effect.

31.  Plaintiff is further informed and believes and thereon alleges that under *California Code of Civil Procedure § 3413*, for an instrument to be subject to a cause of

---

[3] "If a reasonable plaintiff would not have known the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather information he needs." *Garcia v. Wachovia Mortg. Corp.*, 676 F.Supp.2d 895, 905 (2009) citing Santa Maria, 202 F.3d at 1178; *see* also *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) ("Equitable tolling applies when Plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the Plaintiff's control made it impossible to file a claim on time.") (citation omitted.)

**SECOND AMENDED COMPLAINT**

action for cancellation, the instrument must appear to be valid.  All foreclosure documents appear on their face to be invalid.

32.  Plaintiff alleges that Defendants did not have recorded documents showing any legal effective assignment of the Deed of Trust to it and that it therefore has no standing to commence, initiate, or proceed with a nonjudicial foreclosure action against Plaintiff's Property.  In other words, Defendants, as "debt collectors", have and/or had no enforceable rights against Plaintiff's Property.

33.  Defendants NATIONSTAR and/or FREDDIE MAC, as alleged beneficiary and assignee, did not succeed to any interests in Plaintiff's alleged debt either as beneficiary or assignee and is fraudulently attempting to collect a debt and attempting to foreclose on Plaintiff's Property without authority to do so, falsely claiming to be the beneficiary or "creditor" of Plaintiff's loan.

34.  As demonstrated in this SAC, the foreclosure documents executed by Defendants are fraudulent and violate California's nonjudicial statute, penal law and federal laws and ought to be cancelled.

### FOURTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.
[Against All Defendants and Doe Defendants]

35.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

36.  California *Business & Professions Code § 17200, et. seq.*, prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice…"

23

**SECOND AMENDED COMPLAINT**

and conduct which is "likely to deceive" and is "fraudulent" within the meaning of *Section 17200.*

37.  As more fully described above and below, Defendants, as "debt collectors" are doing certain acts and practices, such as attempting to collect on a debt to which they have no right or authority, which are likely to deceive, constituting a fraudulent business act or practice.

38.  Specifically, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, the process of initiating related matters by:

    a) Assessing improper or excessive fees;

    b) Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees:

    c) Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

    d) Failing to provide adequate statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

    e) Seeking to collect and collecting various improper fees, costs and charges that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;

    f) Mishandling borrowers' documents resulting in fraudulent defaults and foreclosures;

**SECOND AMENDED COMPLAINT**

g) Treating borrower as in default on their loans even though the borrowers are under no obligation to make payments to Defendants, or have otherwise complied with mortgage requirements or California law.

h) Failing to disclose the fees, costs and charges allowable under the contract;

i) Ignoring Borrowers' Qualified Written Request and Borrowers' demand to produce the original Promissory Note or comply with Borrowers' request for an accounting of all proceeds/payments involved with Borrowers' loan;

j) Executing, manufacturing, creating and recording false, fraudulent, forged and misleading deeds, assignments, notice of sale/default documents; and

k) Acting as beneficiaries and trustees without the legal authority to do so.

39.  Defendants failed to act in good faith as they took and charged fees for services but did no render them competently and in compliance with applicable law.

40.  Moreover, Defendants engaged in a uniform pattern and practice of unfair and over-aggressive servicing that resulted in the assessment of unwarranted and unfair fees against California consumers, and premature default resulting in unfair and illegal foreclosure proceedings.  The scheme implemented by Defendants were designed to defraud not just Plaintiff but all California consumers and enrich the Defendants.

41.  The foregoing acts and practices have caused substantial harm to not only Plaintiff but to all its California consumers and to all California taxpayers.

## FIFTH CAUSE OF ACTION – QUASI CONTRACT
[Against All Defendants and Doe Defendants]

25

**SECOND AMENDED COMPLAINT**

42.  Plaintiff hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

43.  Defendants NATIONSTAR and/or FREDDIE MAC, as "debt collectors" continues to demand monthly mortgage payments from Plaintiff.  Plaintiff reasonably relied upon Defendant NATIONSTAR's assertion that it/they are/were entitled to the benefit of his mortgage payments.

44.  Defendants NATIONSTAR and/or FREDDIE MAC, as "debt collectors", knowingly demanded payments to retain them for its own use knowing that they did not acquire an interest in Plaintiff's Note or Deed of Trust, such that they could accept or keep Plaintiff's payments.  It would be inequitable for Defendants NATIONSTAR and/or FREDDIE MAC to retain the payments received from Plaintiff which it did not have legal authority to collect.  The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

45.  Section 23 of the Deed of Trust states that: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it." The obligations to Defendant NATIONSTAR and/or FREDDIE MAC under the Deed of Trust were fulfilled when

**SECOND AMENDED COMPLAINT**

they received the balance on the Note as proceeds of sale of Plaintiff's Note and Deed of Trust to a presently unknown entity.

46.  Plaintiff seeks restitution for any payments they made to Defendants NATIONSTAR and/or FREDDIE MAC that were not paid to the lender or beneficiary, if any.

## SIXTH CAUSE OF ACTION – NEGLIGENCE
[Against All Defendants and Doe Defendants]

47.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

48.  At all times relevant herein, Defendant NATIONSTAR is acting as a beneficiary of Plaintiff's alleged debt when they are not.  Defendant FREDDIE MAE is acting as a beneficiary of Plaintiff's alleged debt when they are not.  FREDDIE MAC and NATIONSTAR have formed an unconventional relationship with Plaintiff when they chose to take part in modifying Plaintiff's alleged debt obligation.

49.  Defendants have a duty to exercise reasonable care and skill to follow California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiff that they do not have the legal authority to do.  This includes enforcing the Note and Deed of Trust by collecting or demanding mortgage payments when they do not have the right to enforce the obligation, causing the Plaintiff to overpay in interest making derogatory credit reports to credit bureaus, and failing to keep accurate accounting of Plaintiff's previous mortgage payments, credits, and debits (if Defendant NATIONSTAR is in fact the legally authorized mortgage

27

**SECOND AMENDED COMPLAINT**

servicer for Plaintiff).

50.  Defendants NATIONSTAR and FREDDIE MAC have a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiff that they do not have the legal authority to do.  As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the Defendants as set forth above, the chain of title to Plaintiff's Property has been rendered unmarketable and fatally defective and has caused Plaintiff to lose saleable title to his Property.

51.  As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff has suffered, and continue to suffer, general, and special damages in an amount to be determined at trial, including attorneys' fees, if any, and costs of bringing suit to dispute, validate, and challenge said Defendants' purported rights to enforce his debt obligation against him.

## RELIEF REQUESTED

Plaintiff re-alleges each of the previous allegations as if set forth fully herein.

**WHEREFORE,** Plaintiff prays for judgment against Defendants NATIONSTAR and FREDDIE MAC, and each of them, jointly and severally, as follows:

1.  For compensatory, special, and general damages in an amount according to proof at trial, but not less than $1,00,000.00 against Defendants;

2.  For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.  For an order compelling Defendants to remove any instrument which does or

**SECOND AMENDED COMPLAINT**

could be construed as constituting a cloud upon Plaintiff's title to the Property;

4.  For a declaratory judgment finding that Defendants do not have any legally cognizable rights as to Plaintiff, the Property, Plaintiff's alleged debt, tendered to and executed by Plaintiff;

5.  For the Court to issue an order restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents, or employees from doing so during the pendency of this matter;

6.  For reasonable cost of suit incurred in this action; and

7.  For reasonable attorney's fees, if any; and

8.  For such additional and further relief as the Court may deem proper and reasonable.


DATED:  May 30, 2017

Respectfully submitted by:

_____
Phillip D. Jackson
Plaintiff

**SECOND AMENDED COMPLAINT**

## VERIFICATION

I, Phillip D. Jackson, an individual, am the Plaintiff in the above-entitled action.  I have read the foregoing Complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in Highland, California on May 30, 2017.

Phillip D. Jackson
Plaintiff

**SECOND AMENDED COMPLAINT**

Electronically Recorded in Official Records, County of San Bernardino 6/21/2006 08:00 AM SH



**LARRᵧ WALKER**
Auditor/Controller - Recorder

**842 First American Title Company**

Recording Requested By /
Return To:
MOUNTAIN WEST FINANCIAL INC.
1209 NEVADA STREET, SUITE 200
REDLANDS, CA 92374

Prepared By:
STEFFANI TAYLOR
MOUNTAIN WEST FINANCIAL INC.
1209 NEVADA STREET, SUITE 200
REDLANDS, CA 92374

| Doc #: | 2006-0421023 | | Titles: 1 | Pages: 16 |
|---|---|---|---|---|

| | | |
|---|---|---|
| Fees | | 53.00 |
| Taxes | | .00 |
| Other | | .00 |
| PAID | | 53.00 |

[Space Above This Line For Recording Data]

# DEED OF TRUST

JACKSON
Loan #: 02606009
PIN: 1201-441-22
MIN: 100154600000091032

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated JUNE 13, 2006, together with all Riders to this document.
**(B) "Borrower"** is PHILLIP D. JACKSON, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is MOUNTAIN WEST FINANCIAL INC.. Lender is a CORPORATION organized and existing under the laws of CA. Lender's address is 1209 NEVADA STREET, SUITE 200, REDLANDS, CA 92374.
**(D) "Trustee"** is FIRST AMERICAN TITLE INSURANCE COMPANY.
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated JUNE 13, 2006. The Note states that Borrower owes Lender THREE HUNDRED NINETY-ONE THOUSAND NINE HUNDRED NINETY-NINE AND 00/100 Dollars (U.S. $391,999.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2036.
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ 1-4 Family Rider     ☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
☜⊃   312.62      Page 1 of 10       Form 3005 1/01



02606009

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.
As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SAN BERNARDINO:
LOT 6, TRACT NO. 15618-2, IN THE CITY OF HIGHLANDS, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 265, PAGES 55 THROUGH 57, INCLUSIVE OF M APS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
which currently has the address of 28598 KRISTIN LANE HIGHLAND, California 92346 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

312.62                                          Page 2 of 10



Form 3005 1/01

*32*

02606009

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

312.62                          Page 3 of 10                          Form 3005 1/01

02606009

funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically

02606009

feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to

**CALIFORNIA**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

02606009

obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds

02606009

shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

312.62                                          Page 7 of 10                                          Form 3005 1/01

02606009

by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
&&    312.62                                    Page 8 of 10                                    Form 3005 1/01

02606009

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
312.62                                  Page 9 of 10                                  Form 3005 1/01



02606009

which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ 6/14/06
- BORROWER - PHILLIP D. JACKSON - DATE -

State of _California_ )
County of _San Bernandino_ )

On _June 14, 2006_ before me, _Deborah Springer, Notary Public_,
(here insert name and title of the officer)

personally appeared _Phillip D. Jackson_
_____,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

DEBORAH SPRINGER
Commission # 1416367
Notary Public - California
Riverside County
My Comm. Expires May 6, 2007

Signature _Deborah Springer_ (Seal)

CALIFORNIA–Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
312.62                                     Page 10 of 10                                     Form 3005 1/01

40

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

JACKSON
Loan #: 02606009
MIN: 100154600000091032

THIS ADJUSTABLE RATE RIDER is made this **13TH** day of **JUNE, 2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **MOUNTAIN WEST FINANCIAL INC.** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**28598 KRISTIN LANE, HIGHLAND, CA 92346**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **7.125%**. The Note provides for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of **JULY, 2011** and on that day every **6TH** month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (as published in *The Wall Street Journal*)
-Single Family- Fannie Mae UNIFORM INSTRUMENT
745.30          Page 1 of 3          FORM 3138 01/01

*41*

02606009

average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-FOURTHS** percentage points (**2.750%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **13.125%** or less than **7.125%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points (**2.000%**) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **13.125%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (as published in *The Wall Street Journal*)
-Single Family- Fannie Mae UNIFORM INSTRUMENT

*42*

02606009

Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

- BORROWER - PHILLIP D. JACKSON - DATE -

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (as published in *The Wall Street Journal*)
-Single Family- Fannie Mae UNIFORM INSTRUMENT

745.30                              Page 3 of 3                      FORM 3138 01/01

43

# ADDENDUM TO ADJUSTABLE RATE RIDER

*JACKSON*
Loan #: 02606009
PIN: 1201-441-22
MIN: 100154600000091032

This addendum is made **JUNE 13, 2006** and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at: **28598 KRISTIN LANE, HIGHLAND, CA 92346.**

**AMENDED PROVISIONS**
In addition to the provisions and agreements made in the Security Instrument, or in the event of a conflict between the Note and this Rider to the Mortgage and or Deed of Trust, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **Limits on Interest Rate Changes**
    The interest rate I am required to pay at the first Change date will not be greater than **13.125%** or less than **7.125%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) **(2.000%)** from the rate of interest I have been paying for the preceding **SIX** (6) months. My interest rate will never be greater than **13.125%**. My interest rate will never be less than **7.125%**.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a

1202 LIBOR Addendum to Rider
       2142.35                      Page 1 of 2                                    1/01

*44*

02606009

natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this addendum, and agrees that any conflict between this Rider and the Security Instrument shall be resolved in favor of this Rider.

6/14/06

- BORROWER - PHILLIP D. JACKSON - DATE -

1202 LIBOR Addendum to Rider
2142.35

Page 2 of 2

1/01

45

# INTEREST ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

JACKSON
Loan #: 02606009
MIN: 100154600000091032

**THIS ADDENDUM** is made this **13TH** day of **JUNE, 2006**, and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to **MOUNTAIN WEST FINANCIAL INC.** (the "Lender").

**THIS ADDENDUM** supercedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-FOURTHS** percentage points (**2.750%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During this Interest Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest on the lower principal balance. At the end of the Interest Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest Only Period, my payment amount will not be reduced due to voluntary prepayments.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 6/14/06
- BORROWER - PHILLIP D. JACKSON - DATE -

46



February 12, 2013

<u>*Via Certified Mail: 7012 3050 0001 5811 7056*</u>

Phillip D. Jackson
28598 Kristen Lane
Highland, CA 92346

RE:    Nationstar Case Reference #: Jackson8301
       Mortgagor: Phillip D. Jackson
       Property Address: 28598 Kristen Lane Highland, CA 92346

Dear Mr. Jackson,

As we previously acknowledged, Nationstar received your correspondence dated January 25, 2013 regarding the mortgage loan account described above.

In this correspondence, you appear to seek certain information through a purported "qualified written request" under the Real Estate Settlement Procedures Act, 12 U.S.C § 2605. Enclosed are copies of the following documents that you requested:

- Note and Security Instrument
  - The note and security instrument will validate the above mentioned loan. These include, but are not limited to, information concerning our right to assess fees and costs to the loan, inspect the property, and purchase lender placed insurance or pay taxes on the customer's behalf.
- Payment History
  - The payment history reflects a complete payment history for the period of June 15, 2012 through the date of this letter. This payment history reflects when payments were received, how they were applied to the loan, and any disbursements made from the loan. The payment history provides a description for each transaction and running balances of the unpaid principal and escrow accounts. It also includes the date fees and charges were assessed, any amounts paid towards these fees, and waivers/reversals of these fees is also reflected. Late fees are reported on the annual mortgage statement. If a payment was applied to the suspense account, it will be indicated in the code description column. Payments can be applied to the suspense account if the funds received do not represent the full monthly mortgage payment due, or if Nationstar is not informed of where the payment is to be applied.
- Billing statement dated January 18, 2013.
  - The billing statement will reflect the current amount due on the loan and will also provide a breakdown of any fees assessed, including any lender paid expenses or corporate advance fees.
- HUD1—Settlement Statement
  - The HUD1 provides an itemization of all charges imposed for the real estate transaction, including incoming and outgoing funds. Items indicating POC (Paid Outside of Closing) are fees associated with the transaction but paid prior to closing.

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.

47





- Servicing transfer notice dated June 15, 2012.
- Modification Documents
- Any available Brokers Price Opinions (BPOs)

Our records indicate Federal Home Loan Mortgage Corporation (Freddie Mac) is the current owner of the Note. As requested, we have provided the address and phone number below:

| | |
|---|---|
| Address: | Freddie Mac |
| | 8200 Jones Branch Drive |
| | McLean, VA 22102 |
| Phone: | (703) 918-8579 |

Please note that Nationstar is the servicer of the loan and therefore will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include but are not limited to: payment assistance and modifications, payment posting, validation of the debt, foreclosure proceedings, and payment adjustments. As such, please direct any correspondence related to these matters to Nationstar.

The owner of the mortgage note is the noteholder of the loan note. However there are some circumstances where owner has given temporary possession of the loan note to the Servicer. The owner does this in order to ensure that the servicer is able to perform the services and duties incident to the servicing of the mortgage loan, such as, foreclosure actions, bankruptcy cases, or other legal proceedings.

As of the date of this correspondence, the account is approximately twelve payments delinquent and contractually next due for the March 1, 2012 installment. Should you have any questions or concerns regarding the account, or if you would like to discuss available payment assistance options, you may work directly with Kelly McKnight, Foreclosure Prevention Specialist who can be contacted directly via telephone at 972-956-6247.

Furthermore, the payment history appears to be reported accurately to credit repositories. If you have documentation that substantiates that any of the information reported by Nationstar on the credit report is incorrect, please provide the detailed information for review.

At Nationstar, our customers' business and total satisfaction are very important. Should you have any questions, please contact me directly or if you have general questions regarding the account, please contact our Account Resolutions Department toll free at 888-811-5279 Monday through Thursday, 8:00 a.m. to 8:00 p.m. CDT, and 8:00 a.m. to 5:00 p.m. CDT, on Fridays.

Sincerely,

Kristin Kennard

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.

48

